OEA, OEA, all persons having business with the Honorable United States Court of Appeals through the Third Circuit are allowed to draw near and give their attest. This court announces that the Honorable United States Court of Appeals is adjourned. Good morning. We have one matter on the waiting and that is the case of Fahy v. Horn et al. And that number is 03-9008 and 9009. Ms. Murray? Mr. Norris. In the case of the Court of Merrill v. Caldwell, I would like to reserve 10 minutes for rebuttal. That's fine. You can just put the mic up just a touch. Thank you very much. Is that better, Your Honor? Yes. Okay. Nearly, or rather over, a quarter of a century ago. You can assume we're pretty familiar with the facts. Okay. Maybe where we're going to start is, I don't know if either of my colleagues want to touch on the waiver issue. Sure do. Absolutely. That is my intention to address that first, Your Honor. And I would just like to refer to the murder of a 12-year-old child, which occurred January 9th, 1981. I will proceed to the issue of the waiver. The first issue we present in our appeal is whether the district court erred in actually holding it at a jury hearing on the claim. Section 2254E2 of the federal habeas statute. On the claim. That puts it right in the back, doesn't it? Well, that is the basis for the claim. Yeah. Is it the claim? Well, that's the issue. And at least that's the issue which caused, I believe, the lower court to believe that E2 didn't apply at all. Because the lower court would view Kristen as saying that it was not the claim. And Kristen was in a different situation in that it was a claim of causing prejudice or miscarriage of justice to overcome a procedural default. I wrote Kristen, but I tried to repress it. Yeah, and I actually was counseling Kristen. I hope. But he hated that. That is a bit of a different scenario than an on-the-record waiver for the collateral review. Well, how can anyone waive, in a state court proceeding, a federal right? In other words, it seems to be an anomaly to claim that in state court you can waive a right which only arises under federal law. Well, Your Honor, I suppose that's an issue for the court. The court below, Judge Slaverner, I'm sorry, Judge Slaverner, Judge Shapiro, found that they could. She invalidated the waiver. But she also concluded that had she not invalidated the waiver, there was no basis for revoking the waiver. And she did hold that. My question is more fundamental. While you can get to the merits of it, the question is, on the fundamentals of it, how can someone in state court waive a right which only arises under federal law? Well, he did. I mean, he was calling me on it. When you say he did, you're answering something which I can't accept. You've got to say why. In state court, someone can waive a right which arises only under federal law. It seems to be the only right. It cannot be waived if you're in a federal proceeding or a federal type of situation. Well, the Colloquy included a specific waiver of the right to further review. We know that. And that's what Judge Cowan is asking you. So we know that that is what occurred. The question is, can there be an effective waiver in a state proceeding of a federal right? That's what Judge Cowan is asking. I'll add to his question and ask, why can't there be, since in the guilty plea colloquy, a defendant waives all kinds of federal constitutional rights and federal rights? Well, I think that's true. I mean, the result of his waiver, he said, I want to be executed now. I don't want any further review, state or federal. He never mentioned him and his corpus, though. He was specifically colloquial from this point. He was colloquial. He said he hadn't even discussed it with his lawyers, did he? I don't think he did. Federal, he specifically, he didn't. He specifically said that he had not discussed that, had not been brought up with his lawyers or by his lawyers. But on page 36 of our brief, he is asked, do you understand that you have the right to go to a federal judge and ask him or her to evaluate your claims? Yes, I am aware of it. And then you understand you could appeal that decision to the Federal Court of Appeals and ask them to review your claims. Yes. And then again, you can go to the United States Supreme Court. I am aware of it. And he continued to insist that he wanted to waive all further review. The question is, can a state court waiver bar federal habeas review? My answer to that is yes, Your Honor. All right. Assuming that's your answer. And that was the answer of the court as well. Excuse me. I understand that. I have a much more fundamental problem, and I obviously speak only for myself. But I'm an old state DA and an old state trial court judge. I've tried these cases as a lawyer and as a judge in the 70s and 80s. And I must tell you that the procedure followed by Judge Sabo in this waiver hearing was, in my view, bizarre. And I would like to hear how the Commonwealth can justify both the structure that Judge Sabo used pursuant to the remand order from the Supreme Court and then the tone and tenor of the hearing itself. With respect to the structure, I'm referring to the fact that he declared some kind of possessory interest in this proceeding based upon the remand. It's my proceeding. This is my witness, he referred to Fahey. And then he proceeded to not so much at the outset question Mr. Fahey himself, but to turn him over to the district attorney to question. This is Mr. Fahey's waiver. Doesn't it strike you as being an extremely unusual, say the least, way to proceed pursuant to this remand? Well, Judge Smith, I think the PCRA court's approach to this was that the Pennsylvania Supreme Court had remanded the matter directly to Judge Sabo to determine whether Fahey's offer to wait for the collaborative hearing was totally involuntary. I'm sure that's what they did. And the judge turned Fahey over to the DA for questioning. In fact, there were objections imposed by Fahey's attorney to the fact that they were unable to question. Well, there was another issue going on at the hearing. There were a number of attorneys processing to represent Mr. Fahey. His attorneys of counsel were North Gelman and Lewis Natale. And at this point during when the case was remanded for a colloquy is when federal counsel got involved in the case. And I believe some of what the court is referring to is the PCRA trial court's real concern as to who really was representing Mr. Fahey. Well, certainly, with all due respect, the Philadelphia District Attorney's Office was not. And the prosecutor dominated the initial questioning, at least, of Mr. Fahey and proceeded to do so despite objections from Mr. Fahey's counsel as to how they wanted that proceeding conducted. And it was conducted solely because Mr. Fahey had indicated to the court that he wanted to waive these rights. It was his proceeding. And before you even got to that, in order to determine if somebody can validly waive, don't you have to determine first that they're competent? Well, this court recently held in Taylor v. Horn that you don't necessarily. When a trial court finds that a waiver was knowing and voluntary, implicit in that finding is a competency determination. Now here, and secondly... But in Michael v. Horn, in the capital case, you've got to determine that they're competent first. And Judge Shapiro, was she not right in saying that? In other words, if I say to you, I waive X, don't you first have to figure that Ambrose is competent to waive at all? Well, you do, but there are a number of things that I can do. In that regard, you have to make a competency determination or specifically have a competency hearing if there is some significant addition of incompetence. Here, there was none. Ms. Murray, isn't the answer to Judge Ambrose's question a Supreme Court decision? Govindas v. Moran, a court is not required to make a competency determination in every case. And in any criminal case, a competency determination is necessary only when a court has reason to doubt the defendant's competence. That's correct. And Judge Shapiro had no reason to doubt his competence. But his attorneys brought it up time after time. They did. Colloquially, they insisted that competency was not an issue. And, I might add, Judge Shapiro was also the piece of the reasoning. Well, what did they bring up? They wanted to ask questions relating to competency, and Judge Shapiro cut them off at the turn every time. It wasn't for competency. They made a vague allusion to the conditions of confinement being a hardship. They never, ever suggested that they were incompetent. Well, even if it was just a voluntariness issue and not an issue of competency, Judge Shapiro still cut them off and prohibited the introduction of any evidence that might have been relevant to the issue of voluntariness, didn't he? Nothing was, when the state repeatedly said that he was not threatened or forced in any way to waive his right to further collateral review, counsel said nothing. But a reading from Judge Shapiro's decision, when they inquired of Judge Stabo, quote, I mean, doesn't the order say you are determined by competency? Close quote. The judge responded, quote, you and I know you are not insane, right? Those attorneys might think you're insane, but I don't. It's sort of front and center, isn't it? Well, Your Honor, there's one thing I need to point out in that regard. Judge Stabo was the trial judge and he was also the PCRA judge at State's third PCRA proceeding, Judge Stabo. And there was a two-day evidentiary hearing, okay? And at that time, counsel suggested that Stabo might be incompetent, but no evidence was ever presented as to competency. And the remand was not for purposes of determining competency, was it? No. The exact language of the remand was not. And there really was never an issue of competency in this case. Competency was entertained by Judge Shapiro at the second evidentiary hearing, but she soon concluded that they was not incompetent. There's no question of competency. How do you get around the fact that it appears Judge Stabo cut off Fahey's lawyer from establishing facts or wanting to put into record facts which would indicate that this is not really a waiver, that it's a coerced or pressured waiver? The lawyer appears to have been sidelined by Judge Stabo. Counsel never suggested at the hearing that Fahey had been threatened in any way. He was prevented from bringing to the court's attention proofs. He was trying to make an offer of proofs that he was going to make, and Judge Stabo expressed complete disinterest in that type of proceeding. I might further add that whatever that offer of proof was that Judge Stabo did not entertain was brought to the Pennsylvania Supreme Court, which concluded that the waiver was competent, knowing, and voluntary. No, no, no, wait, wait. That's after Judge Stabo's proceeding. The fact that the Supreme Court agreed with Judge Stabo does not, for our purposes, make that a fact that we're going to live with. Our briefing appears to be indicative of the fact that Judge Stabo cut off Fahey's attorney from trying to establish facts which would indicate that whatever waiver and so forth was coerced and not a voluntary waiver. And my response to that, Your Honor, is that that proffer, whatever that was, and it certainly didn't include any psychiatric proffer because no psychiatric proffer was made in Fahey's brief. No, we're not saying that. No, it didn't. It was cut off. Would you acknowledge that? It seems to be a yes or a no. I don't want to put words in your mouth, but this should cut back. I agree that Judge Stabo did not permit extensive questioning on the part of counsel. Counsel was prohibited from establishing facts which he could indicate that Fahey's waiver was induced by the conduct of personnel which prevented him from truly expressing his sentiments. My response to that is, while counsel was not permitted to question, say, about a vague allegation of the petitions of his confinement, because that's what they asked questions about. No, counsel never said, my client was threatened before he came into court today. And allegedly, according to both Fahey and Mr. Gomez, they told him. He talked to counsel before he went into a conflict, and counsel knew. When did Fahey mention to the court his concern about a prison guard who had the same surname as the victim of the crime? That would be the first hearing. August 2nd. On August 2nd, Your Honor. And the court... What was that? Was there no relevancy? Well, and the court said to him, well, he transferred him to another prison, and Fahey appeared to be fine. He said nothing more was said about it. I don't want to cut off your time on the waiver, but I'm interested in your position concerning the findings of facts which were made by the district court on the habeas petition. If my colleagues have no objection. I'm concerned with your position concerning the findings that Judge Shapiro made. Okay. Well, before I go into that, I just want to point out that we do have, there's an issue with regard to the standard of review. I think this court's recent decision in Taylor makes it clear that the federal habeas statute standard of review would apply to the state court's findings of the waiver was competent, knowing, and voluntary. And that's both the lower court determination and the Supreme Court's determination. With regard to the district court findings, the only evidence of alleged threat by prison guards was Fahey's own self-serving testimony. Judge Shapiro did not really even believe that. She stated she didn't believe he actually suffered the abuse that he alleged. She said she found that Fahey, quote, lived in a state of fear and agitation caused by the expectation of danger. Based on Fahey's mental health expert, Fahey Crawford, or one mental health expert, testified at the hearing of Dr. Bernstein, and he was of the opinion that Fahey suffered from post-traumatic stress disorder, which caused him to believe that his life and the lives of his family members were in danger if he waived his rights. Dr. Bernstein also opened that Fahey was incompetent. He said he was competent that day. He testified he was competent during the trial. But we know the testimony. What fault do you find with the findings that she made concerning the petition? Okay. The fault is that the court really applied it as a no-vote standard, and the standards have to be whether the petitioner rebutted the state court's factual findings, both the trial level and the Supreme Court. They're both entitled to deference, whether the petitioner rebutted those findings by clear and convincing evidence. The rebutting thing is that if no findings were made in the first place, by which she is bound. Findings were made by which she is bound. As to voluntariness? Yes. Please read them to us. I remember a general determination made by Judge Staple, It has to be the Supreme Court. As Supreme Court findings, appellate court findings are entitled to the same deference that lower court findings are entitled to. Wait a minute. Time out. How can an appellate court make findings? Well, it can. This court has repeatedly said that. The Supreme Court has said it in Sumner v. Martin. No, no, no. How can an appellate court make findings of fact? I know we can. But state court findings are both entitled to deference. How does an appellate court make findings of fact? It has to be made at a trial court level or some lower court level. And then it's appealed to the appellate court. And the appellate court applies a certain standard of review to that finding of fact. Judge Smith's question is, where is the finding of fact at the trial court level before Judge Staple or the picker level? The court ultimately concluded that the waiver was knowing, intelligent, and voluntary. Well, they reviewed the findings of fact made by Judge Staple. Is that what you're saying? Well, yeah. But they didn't make findings of fact. That's a great point. They endorsed his view of the record, but they only reviewed what he did. They did, but under the APA, an appellate court's findings aren't entitled to deference. We can agree, can we not, Ms. Murray? Yeah. The statutory language itself, as odd as it may be, presumes that there are factual findings made in the course of state proceedings, both at the trial court level and at the appellate court level. Right? Yeah. Now, as Judge Ambrose suggests, that is highly unusual as a practical matter, the findings of fact are virtually always made at the trial court level and reviewed and accepted or rejected. But that's not a credibility determination. They have to be made by the trial court. Absolutely. But I want to return to the procedural issue here because I'm deeply troubled by it and also because it necessarily, in my view, based on our own jurisprudence, impinges upon the review of the findings of fact and the nature of the standard of review that apply. I want to just read you this brief language from our elaborate opinion and ask you to comment on it. What he said was, the procedures a state court applies when adjudicating a petitioner's claims may also be relevant during habeas review. The extent to which a state court afforded a defendant adequate procedural means to develop a factual record, whether the defendant was afforded a full and fair hearing, to put it in the parlance of the pre-ADPA statute, may well affect whether a state court's factual determination was reasonable in light of the evidence presented in the state court procedure or whether the petitioner has adequately rebutted the presumption. Aren't we compelled by our own jurisprudence to consider the nature of the proceeding and the manner in which it was conducted by Judge Papoff in determining the reasonableness of any fact-finding he engaged in on the issue of voluntariness or voluntary intelligence? Yes, Your Honor. But the lower court concluded that simply by virtue of the proceeding, 2254D didn't apply at all. It applies under the law. The question is to what extent. All of that weighs into the equation in applying difference, but 2254D still applies. And Lambert holds that. Taylor v. Horn, the recent decision that was issued last month, they all hold that. But the point being that if there is something wrong with the way things were done, the process by which the findings of fact were made, then you don't have a foundation, if you will, for claiming that there should be deference given to those findings. Isn't that correct? I think there is a foundation in this case. No, I asked you a legal question. If there is a problem with the process by which the findings were made, then we don't have to give deference to those findings, correct? Don't apply to this case. It's a matter of just theory. It would have to be a very, very significant problem. That's not what Lambert says. I think what Lambert says is it weighs into the equation, but it doesn't mean you don't give deference. That's not the way I read Judge Chertoff's language. I think it's a question of the level of deference, if you will. You don't think that cutting off counsel and virtually prohibiting defense counsel from participating in a meaningful way in the presentation of evidence is fundamental to the manner in which this proceeding was or could have been conducted? Well, trial judges frequently cut off counsel, and that is not necessarily dispositive. We've even known to do that ourselves at the Apollo Court level, but that's not my question. But not quite like here. I don't think that is dispositive of the knowing and voluntary nature of the waiver. Ms. Murray, I've read both of these transcripts, and it's part of the waiver. And again, I call upon a lot of experience, ancient as it is, down in the trial findings. And I must say that when I read a trial judge threatening contempt, threatening several times to have defense counsel removed from the courtroom,  it even included the assistant district attorney present, playing up, apparently, to Mr. Fahey by suggesting he had more brains than all of counsel. Together. Together.  I don't ask you to defend. Do you think that that is anything other than an absolutely extraordinary proceeding? I'm just a country lawyer. Maybe this type of thing goes on a lot more than I realize, but it sure didn't go on in my experience. The point I would make in that regard, Your Honor, is that while that might seem extraordinary, the court was not in any way pressuring Henry Fahey to waive his rights. Anything he kept saying to Mr. Fahey, look, if you don't want to waive it, that's fine. I'll send it right back to the Supreme Court. We'll go ahead with the appeal. That was his card. It was not coercive. Every time someone raised something, all right, well, we'll dispense with this, and I'll send it back up. Which means there's no waiver. Right. But Fahey... Which means there's no waiver. But he insisted about waiving his rights, despite counsel's efforts to... But the county police court judge was hesitant to allow an eventual determination of no waiver here. He continued to press and not to send it back up, despite several threats. Well, I think that was because Mr. Fahey kept insisting that he wanted to waive his rights. All of the abusive language that took place vis-à-vis counsel took place in Mr. Fahey's presence. Mr. Fahey was a witness to how his lawyers were treated in that court. Be that as it may, the waiver is covered extensively in a brief. You didn't cover it in your opening brief, though. Oh, I didn't? The question is whether or not you waived it. The waiver? Oh, can you check on the waiver? Not in your opening brief. In my opening brief, Your Honor. Yes. Okay. Just to change topics a little bit, how can anyone meaningfully prosecute a vaccine claim, put a vaccine claim forward, when they don't have transcripts of the voir dire? We've seen a lot of these, and uniformly they're based on voir dire that occurred in the trial court. How could he meaningfully go forward with that claim when he was prohibited from getting even transcripts of theirs? Well, he wasn't prohibited. His lawyers never ordered the transcripts. Not his trial attorney, as you look with the appellate attorney, not his first PCRA attorney, and now, I mean, 20 years later, there's allegedly no transcripts. I don't know what efforts his current counsel has made to get transcripts. It's rather an ineffective assistance claim. Well, collateral counsel's ineffectiveness is not a constitutional claim. But the bottom line is that this court addressed this issue in Tavervan and also in U.S. v. Sierra. The point is, at this point, he needs to show a colorable need for the transcript, and he hasn't. Well, I could show a need if he doesn't have one in the jury selection process. Well, this court has previously suggested that what he needs to do is confer with trial counsel, get an affidavit from trial counsel, do something to make some constructive allegation as to error at the portion of the transcript that's no longer available years later. This is not a situation in which Faye would deny the transcript. Why is that if Faye can't make a showing if she has nothing to make a showing with? Well, I suppose it could turn into a catch-22, but years later, with no effort, when it is the appellant's burden to obtain the transcript, and when a series of lawyers, many of them post-conviction, with no effort to obtain the transcript, at some point, I mean, the Supreme Court has said, you have to show a colorable need, and this court has also said that. And he hasn't done so. He has an investment claim. I mean, I could probably get to that in rebuttal or whatever. He has an investment claim, and he has no other specific claim of error relative to the jurisdiction. On the marriage, I think we'll deal with Ms. Gondolas, and then we'll maybe get a chance to deal with that on rebuttal, unless my colleagues have any questions on this now. There's one other issue in my appeal, but it's fairly straightforward. There's no other issue, so. We'll deal with that on rebuttal as well. Okay. Thank you, Your Honor. In fact, we'll get both sides a chance to deal with that. Just before you get up, Mr. Knowles, is Rebecca Lamb here? You just want to sit up here, if you wouldn't mind. Good morning, Your Honors. This is Billy Knowles from Andrew Lowry on behalf of Mr. Fahey. This case has penalty phase issues pending before the district court that are legitimate, and it has the guilt phase issues that I'm going to talk about this morning. The procedural default issue is something that we urge the panel to deal with, because it's amazing to me that after all these years, we're still debating that proceeding that I conducted with Judge Sabol 10 years ago. I mean, it's remarkable. I won't go over it in detail. Judge Sabol says five times there was an effort to question Mr. Fahey, to make a moral proffer, to make a written proffer. It's actually seven times. On competency or coercion? The voluntariness of what is going on. I'll tell you right up front.  But the reality of it is we were saying there are psychological factors that are affecting one's ability. There's also a fundamental distinction for legal purposes, which is competency, which goes to capacity, and voluntariness, which may have absolutely nothing to do with it. Sure, but voluntariness has two components. One, voluntariness has the component of whether somebody has the capacity, and two, has the component of the choice. You don't have to reach voluntariness if someone lacks any capacity. Yes, but within voluntariness there is the second component of the choice the person is making. Is that choice being made with open eyes? Is that choice influenced by a psychological factor? Is that choice something akin to what Judge Shapiro found was the impetus for what Mr. Sabol did mistakely? Since you focused initially on what Judge Shapiro found, let me ask you about the extent of deference that we owe the state court findings here. It's my recollection from Judge Shapiro's opinion that she ruled that because of competency determination it was not held that the state court's determination of voluntariness was not entirely the presumption of correctness. Is that right? Well, perhaps. Is that what she—do you agree that that's what she determined? That's part of what she determined. You agree that she determined that. We can get into other parts, but if we're going to get anywhere here, we have to try to find a certain commonality. If—and you've heard me undoubtedly inquire of your adversary about the Supreme Court case of Devennis v. Moran that indicates that a competency determination is not necessary in every case. If that is in fact the law, then wasn't Judge Shapiro in error in determining that the presumption of correctness was not applicable? Well, what Judge Shapiro did is that as to the issue—she actually found Mr. Fahey competent, ultimately. So the issue is not a starter in this case, and competency as such is not the issue before the court. What is the issue before the court is that as to the voluntariness of the waiver, as to the validity of the waiver, something that this court in Taylor most recently said is a valid legal issue. And, of course, the Supreme Court itself has said numerous times it is a valid legal issue. As to the validity of the waiver, whether it was done with open eyes, whether it was done by somebody who was capable of waiving, or somebody who was waiving because of a factor affecting their waivers that the court should hear about. As to that, Judge Shapiro found there was no failure to develop the evidence in the state courts because there was an attempt to prompt for it several times to Judge Shapiro, and he refused to hear it. No failure to develop in the Pennsylvania Supreme Court because it was all provided to the Pennsylvania Supreme Court in affidavit form. It was affidavit from myself, from Mr. Gujramal, another inmate. And the state courts wouldn't hear it. Even with all that, Judge Shapiro said she would give deference to Judge Stable's waiver ruling and then conduct a hearing to see if we could rebut that by clearly convincing evidence. That's perfectly permissible under 2254E. Under E2, there was no failure to develop. Under E1, she put the burden on us to rebut the state court finding by clear and convincing evidence. And so the Commonwealth's position that somehow Judge Shapiro did not give deference, she gave deference. She said the unfairness of the hearing is significant under 2254B2. That's the reasonableness of the state court fact finding. And it's significant under 2254E1 whether we rebut it by clear and convincing evidence. She then did what this court in Christensen's district court could do and what they can do clearly under the plain language of the statute, which is conduct a hearing on a procedural default issue. Would you agree then that the Lambert language that I recited for Ms. Murray is relevant here to the fact finding by Judge Stable? Sure, absolutely relevant. But it's relevant in two ways. It's relevant under 2254B2 to the relevancy, to the reasonableness of what Judge Stable did. And what the Pennsylvania Supreme Court did in their affirming Judge Stable, and remember how the Pennsylvania Supreme Court did that. Ms. Murray says, oh, they reviewed everything and they affirmed it. They did that by putting blinders on. We won't read Mr. Nolas's affidavit. We won't read Mr. Fagan's affidavit. We won't read Mr. Jamal's affidavit. We won't read the affidavits from the interns who say, we were there, we saw what happened, and this man was not intact. They refused to look at any of that evidence when they affirmed. They only looked at the four corners of what happened in that hearing. It's somewhat surprising that even looking at the four corners of what happened in that hearing, they affirmed. But nevertheless, they refused to look at the very evidence that was presented to try to show that that hearing did not properly assess the issue that they had remanded in the first place. And just as a footnote, the August 21st affidavit from Mr. Fagan, that's the affidavit within 15 days of the hearing, where he said, I was coerced, I was threatened, I was afraid for myself, I was afraid for my family, what I did was not voluntary, I want to litigate. That was given to Judge Stable. That was still given to him before the case went to the Pennsylvania Supreme Court, and even then it was put to the side. In any event, what Judge Shapiro did is she looked at all of that, and she interestingly said, even with all of that, even with, I was speaking for Judge Shapiro, I could stop right now and say this whole thing was not reasonable, was not fundamentally fair by any stretch of the imagination, but I would still give it deference, which is what she did. And then she said, Petitioner, can you rebut by clear and convincing evidence the state court finding that there was a voluntary, proper waiver? And she conducted a hearing. And she made findings of fact. And remember, there's this interplay in the briefs, you know, where the Commonwealth is kind of saying clear and convincing is this thing that your honors reassess on your own. The reality of it is whether something is clear and convincing, is it clear to the trier of fact, to Judge Shapiro? Is it convincing to the trier of fact, to Judge Shapiro? She conducted a hearing, and she very carefully laid out her findings of fact. Dr. O'Brien, the Commonwealth Psychologist. Well, after all of this, I take it, going back to my original question, that you agree that Judge Shapiro correctly applied the 2250 presumption with respect to these findings, thereby requiring you to rebut them? Yes, I did. Our position was you shouldn't even apply the presumption to the hearing. Well, that's what I was getting at when I was asking you about her determination with respect to competency, which I agree with you is not an issue in this case. What was ruled? How did Judge Shapiro rule with respect to voluntariness, with respect to competency, to competency? With respect to voluntariness, Judge Shapiro's ruling was that we rebutted any state court finding by clear and convincing evidence. And that, in any event, that part of her finding, and part of what Lambert says is appropriate when you look at 2254E1, the clear and convincing section of the statute, is whether the state court proceeding was fair, whether it was a hearing, whether the facts were actually developed and heard by the state court. And in that regard, she found that that proceeding was not fundamentally fair. And even with deference, those fact findings are rebutted by clear and convincing evidence, the evidence showing that, and it's a very simple concept, what motivated Mr. Fahey was his belief that he would be harmed and that members of his family would be harmed. I don't know if you remember within a year earlier that this proceeding was started on a murder, and it would be the things that Mr. Fahey said about what happened to him. And I won't go into all of the facts. Your Honor, I've read the record. But this is a case where there is a prior report from the county prison where Mr. Fahey was arrested relating that he had been beaten by thugs, and that he had a post-traumatic symptomatology as a result. And so what your Chicago found is that Mr. Fahey's testimony about what he believed, what his perceptions were, and why he was waiving, and that that was not voluntary, not made with open eyes, not made intelligently and bluntly, all of the key words that you have in any voluntary case, they don't apply here. His motivation was not knowing intelligent voluntary waiver. Judge Shapiro found Dr. O'Brien, the Commonwealth's rebuttal mental health practitioner, not credible. She found Dr. Bernstein, our mental health practitioner, credible. And she did exactly what trier attacks do. She looked at all of the evidence, and she said applying the clear and convincing standard, giving the Commonwealth the benefit of the doubt, in other words. Even so, the presumption of correctness has been rebutted. And so the reality of it is if what you had before the court was simply the waiver issue as to procedural default, clearly that is an issue that should be looked on in Mr. Fahey's case. But I will open it again in response to your question. Would you also, before we go on to the rest, would you address whether a state court waiver can affect a federal habeas review? Judge, I'm going to throw words right out of my mouth. No, it cannot. There's only one case that arguably is in the ballpark, and that's the 11th Circuit case that's a common one-sided, the Allen case. That's a case where the 11th Circuit assumed for the sake of argument that such a thing is possible. And went to merits. And then went on to the merits. And also concluded that he had to do that. And also concluded that he had to do that. That's not a binding precedent by any stretch on this court. There is no other case along those lines. And probably so. Federal habeas corpus is a federal right. Federal habeas corpus is something that you would not normally waive in another forum. The guilty plea situation, Judge Smith, you don't. Why not? Why wouldn't you? Well, it's all kinds of federal constitutional rights. And, of course, an opinion may come. Yes. But so why not? There is no case. Oh, I understand there's no case. But I'm trying to find the logic behind this position. Because drawing upon that analogy, I'm trying to find then what differences there are here. Especially given the fact that it will always be an Article III court that determines whether or not the habeas right was waived in the first place. On the other hand, from a policy standpoint, it would seem to me that any declaration that there can be no waiver of federal collaborative review can only have the effect of dissuading prosecutors from entering into plea agreements. You make a lot of sense conceptually. You absolutely do. But that's not everything. No, and then that occurs. I don't know. And if you're saying that even a blind hog can find an acorn every now and then, he just caught his wife. Just making a point, however, and even you take all that, it makes a lot of sense. It doesn't apply here. But we're never going to have to reach this issue of whether or not the federal rights have been waived if we find that the whole process was inferred and therefore there wasn't any reason to find them. And then one footnote to that. If you were to have a waiver of federal rights, some judge somewhere would have to say, there's a waiver of federal rights. Judge Stengel never said that. The Pennsylvania Supreme Court never said that in two separate appeals. And certainly Judge Shapiro found the opposite of that. So not only do you conceptually, it could be whatever it is, but you don't have any court ever ratifying such a waiver. In this case, say that he waived his, also his habeas rights. There's no Supreme Court opinion that says, that's contrary to that, that says that we have to, you know, that the state court was wrong. There's no Supreme Court opinion. Therefore, don't we have to respect the state court's finding in that regard that they looked at it factually and he waived his habeas rights? I would say, Judge Kallen, although maybe we're a little far afield given the court, what's before the court, but that, no, you wouldn't apply that kind of analysis. Because the question of whether there's a Supreme Court case that controls is not a question that goes to procedural issues. That's something that goes to whether a claim for relief, a substantive claim, is something that can be ruled under the defendant's favor. This is a procedural issue, which is traditionally determined independently by the federal courts. And the statute itself, as the court, Mr. Jenner, you laid out in Kristin, very clearly, it's talking about claims, not about this procedural stuff. This procedural stuff is still done the traditional way district judges did it, even before the edict. Let me throw out just a couple more concepts in the ballpark of procedural default. Ms. Murray did not argue it, but it might even simplify things even further. Ultimately, what the Pennsylvania Supreme Court did in this case is to apply the time bar. Ultimately, it applied a procedural default rule that this court has already found, Blonstein, Taylor, several cases, to be not an adequate bar. And that's significant here for several reasons. One is, in common way, this court found that you look at the bar that the state court actually applied. Since, ultimately, the bar that the Pennsylvania Supreme Court applied is not an adequate bar, the whole waiver argument could be almost academic. It's not, I don't think, because we want to admit it. I think your Honor should affirm. But given that there's a not adequate bar, it's the bar that the courts ultimately put on this case. There's no adequate bar to begin with. Your winning only gets you to the merits. Yes. And that's what I'm talking about. Do you want to go into it? Let's just start with the confessional claim. Yes. Yes, Your Honor. I will say that on the merits before Beard v. Banks, the penalty phase merits would be a lot easier in this case. But as to the statement's claim, and I'm glad you brought that up, Judge Antler, that's the claim that I wanted to devote the core of my presentation to. This case has valid mental health-related ineffective assistance of counsel issues. As to the penalty phase, they are still pending in the district court. My suggestion is, and Judge Shapiro is going to have to look at that. My suggestion is that when Judge Shapiro does that, that Your Honors permit her to also look at the ineffective assistance of counsel as it related to the confession with more care. Why can't we make that determination? I'm sorry? Why can't we make that determination? You could, but I think ultimately this claim is going to need an evidentiary hearing. Let me tell you why I say it. But didn't she already make that determination? Judge Shapiro actually ruled ultimately that Beard was harmless. And the point I was trying to make is why can't we make that determination? Why can't we make that determination? Absolutely, if you think Beard is harmless, hold hands over it. But as I'm going to tell you in two minutes, this Beard is not harmless. It's not harmless in the specific contours of this case. But let me jump to that, actually, and then I'll come back to what I wanted to talk about, the validity of the confession itself. This Beard is not harmless because, well, for starters, when you look at Ms. Rubino's closing argument at the trial, she argues for 31 pages. 15 of those relate to this confession. When you look at my friend Ms. Murray's brief to this court, there are five pages in the statement of facts, from page 15 to page 20. Pages 15, 16, 17, and 18 all relate to this confession. Judge Shapiro ruled that the error ultimately would be being harmless because Mr. Fahey confessed, quote-unquote, to his girlfriend, and because there was circumstantial evidence that showed that he was present at the scene and he ran away afterwards. And I won't go into all the details. Surely there was circumstantial evidence. What Judge Shapiro missed, however, and the reason that harmlessness should not be applied to this issue, is that the question isn't did he do it. It's a question of degree. It's a question of is Mr. Fahey guilty in a trial without the confession of first degree murder, or could this jury that was already inclined just from looking at him to think that he had some kind of problem because they found extreme disturbance at the penalty case, could this jury have said, no, it's second degree. Second degree, as your honors know, means a life sentence in Pennsylvania. It's a pretty serious conviction. Could this jury under the instructions have said, no, there's no evidence of specific intent here sufficient for a first degree murder conviction, and so we will use the rape to supplant the intent element and convict him on the second degree. That's the real harmlessness analysis here. The confession to his girlfriend is three words. I did, as Mr. Fahey said to her on the telephone from the police station. Does the sickness somehow undermine the weight of the confession? I don't get your point. The point is that even if Judge Shapiro is right with his sort of harmless error, Mr. Fahey did it, as he told his girlfriend, that doesn't mean that necessarily the jury would find that he did it with some specific intent sufficient for a first degree murder conviction, where the jury had the option of saying, yes, he did it. It's a rape. It's a felony murder. Second degree. Is not a Pennsylvania jury permitted to infer the other evidence? Yes. The malice? Yes. Yes. And those facts are graphically in the record in various ways. Graphically in the record to a jury that already thinks that this man from seeing him, they're going to have a problem. Because they said that at the penalty session. They said that when they found an extreme disturbance. In one of the many cases. Circumstances. Right. So the real harmless error issue, so to speak, the one that Judge Shapiro did not address in her opinion, it's a very thorough opinion, but she dismissed it, is, is it harmless as to the degree of guilt? Is it harmless? If you exclude the confession, can it be said with the confidence befitting this position of a capital case, that this jury was convicted on specific intent, first degree murder, no matter what? And that's fine. Don't you have to show that the state court concluded that the confession was lawfully obtained? Yes. So, Ben, don't you have to show that that was an unreasonable application of clearly established federal law? Yes. Yes. So let me go back to, I was jumping ahead to the harmlessness issue because that was the old, the question that Colin posed about does it matter at all. It does matter. But it's first got to be improper. It's first got to be unlawfully obtained. Oh, yeah, yeah. What you were just discussing. Exactly. And in going back now to unlawfully obtained, I ask you to remember that, you know, the Supreme Court's holdings in Moran v. Burbar and Fair v. Michael C. and Miranda itself, that there are two components to the admissibility of statements when there's a Miranda issue. There's voluntariness in the sense of did the police coerce, did the police trick the person, did the police threaten the person. That's, we'll put that here, A. And then there's B. There's the concept that the case is called knowing intelligence waiver, and that has to do, as the Supreme Court said in Fair v. Michael C. and Moran, has to do with the educational background of the defendant, the defendant's understanding, and the defendant's mental state. Those are the two components. What happened here is you have an ineffectiveness claim, because that's the core of our challenge to the confession, where the counsel put on Mr. Fahey at the suppression hearing to say that he was tricked into signing the papers, but did absolutely nothing, nothing, nothing to develop and present evidence as to what it was to be, as to the knowing and intelligent nature of what the defendant was. And why counsel didn't introduce that evidence. At the hearing that Judge Sable conducted on ineffective assistance of counsel at the penalty phase, Mr. Green, the lawyer, said, and I've got to tell you what the evidence is in a moment because it's significant, but he said he never looked at the prior mental health reports, and they include competency evaluations in these very cases that were pending before the court, never looked at them, never read them, never thought about them, never used them, should have used them, made a mistake in not using them. That's Mr. Green's testimony. From that testimony, Judge Sable found, from that testimony, Judge Sable found Mr. Green had those records. And if you were to give deference to Judge Sable's findings, it makes Mr. Fahey's claim even better, because that would mean that Mr. Green had records that within five days of when he was arrested, Mr. Fahey was arrested on January 29th, on February 3rd, there's a report from Dr. Wainwright at the prison that talked about Mr. Fahey being in terror, hallucinating, having a post-traumatic reaction,  that's within five days of the arrest, counsel had that report from Dr. Wainwright, and you have that report in the supplemental appendix. If you look at volume six of the supplemental appendix that we've provided to your honor, all these reports that I'm going to refer to were laid out in there. Counsel, if you take Judge Sable's ruling at face value, and I invite the court to do that, it would mean that counsel had a report from Dr. Stanton and another report from Dr. Camille, one of them conducting a competency evaluation in this case that had been ordered by the court, so Judge Sable was not without any evidence. On the same court? On the same professional court. Different than the suppression hearing. This is at the PCRA hearing on ineffective assistance of counsel. At the suppression hearing, he was without any evidence. At the suppression hearing, counsel never developed and presented any of this stuff that I'm telling your honors about. Did Fahey ever contend that he would have given a completely different testimony as to the confession? What would Mr. Fahey himself have done had he been represented by counsel? Did he ever contend that he would have given a completely different testimony? I did not do it. The answer is, we pled that a reasonable counsel would have developed this evidence, informed Mr. Fahey of it, and presented it. Now, there hadn't been a hearing, so fact-finding, to answer your honors' question, we don't have. But the point is, we pled, we submitted to the court, that had it been represented by a reasonable counsel, the whole contour of the trial would have been different. You wouldn't have put Mr. Fahey on, even at the suppression hearing, if you had real mental health evidence to present. The question is, assuming there's ineffectiveness, the second prong of Strickland, The prejudice. The prejudice, how, the question is, if he had presented this, how would that, and he failed to do so in this case, you claim, where is the prejudice when the evidence was there that he confessed, For purposes of the judge viewing him, there is no reason to put in a claim of incompetence, insanity, or whatever, in the first place, so where is the, assuming that there's ineffectiveness, where is the second prong if he had this evidence and he didn't use it? Isn't the second prong that you would have to convince us that Judge Szabo would have concluded that there was a prejudice? Well, not Judge Szabo. We would have to convince Judge Strickland that a reasonable fact finder, a reasonable probability, a reasonable objective fact finder, sitting in Pennsylvania at this time, that there's a reasonable likelihood that he could have said, based on this evidence, you know, Along with that, you have this, whether or not, getting back to the first prong, whether it was ineffective for counsel in the first place to claim on the penalty phase that he didn't do it. Well, the penalty phase is not before the court, but that wasn't exactly what counsel did at the time. In other words, if all of the evidence was put in, and it wasn't put in by counsel with respect to psychiatric reports, how would that have shown that he was coerced into giving that confession? And the answer to that, the simplest way to answer that, I mean, I can recite to you a bunch of cases about, you know, whether somebody's acting reasonably with open eyes. Assume all that evidence is relevant. Assuming it's all relevant, look at what the Pennsylvania Supreme Court said on direct appeal. They said, and read from the direct appeal thing in 311, the test is whether there was sufficient mental capacity for the defendant to know what he was saying and to have voluntarily intended to say it. This is during the context of the confession. The duty of the suppression court is to determine whether the Commonwealth has established, by the ponderance of the evidence, that the confession was voluntary and that the waiver of constitutional rights was knowing and intelligent. The question for your honors is, can you confidently conclude? Because that's what Strickland talks about. Can you confidently conclude? There would not have been suppression if the court that's applying that standard. Obviously, Judge Shavaro confidently concluded. The point is, if all that evidence came in, how was he still coerced? Let's assume that's a mistake. How was he coerced into giving that confession? Judge Shavaro, that's what I was trying to explain at the outset. It doesn't show coercion. The whole idea under Miranda is that police interrogation is inherently coercive, and so you do two things. Under A, you look at whether it's coercive. They gave him his Miranda rights. And for A, it's fine. For purposes of my presentation, your honors, forget about coercion for a moment. But you look on waiver, on waiver of Miranda rights, whether that waiver was knowing, intelligent, and done with open eyes. And when you do that, you look at evidence that within days of his arrest, and then prior to the trial, they were finding in his record that he hallucinated, that he had thought broadcasting, that he had memory difficulties, dementia, organic brain damage, severe depression, intellectual impairment, auditory... Linda, add 10 minutes. We gave Ms. Miranda just 10 minutes. Auditory hallucinations, seizures, insult impairments, judgment impairments, that he had depressive and emotionally unstable elements. All of that is in the reports that either counseled Miranda, because they're the reports in this case, if you take his testimony at face value, or if you take Judge Sable's finding that he had, and he never presented it at the suppression hearing. But even the psychiatrist, for example, who said that he had, you know, his own personality disorder, didn't he also find that he did not have a major mental illness that would have affected his ability to waive? All of the doctors said Mr. Fahey did not have a major mental illness in the pretrial setting, yes. And even a major mental illness would not, as a matter of law, stand in the way of a determination. No, not necessarily. Let me take a step back and say the thing I should have said at the outset. If you put aside, if you agree with us as to harmless error, the issue before the court really is, is what we've given you sufficient as a proffer for Judge Shapiro to hold a hearing on whether counsel was ineffective for failing to use this evidence at the suppression hearing? That's the real issue before the court, because the ineffective assistance of counsel for failing to develop the evidence at the suppression hearing has never been addressed by the state courts in any way whatsoever. The Pennsylvania Supreme Court never addressed it on direct appeal. They just relied on the evidence that counsel, we have submitted, ineffectively developed. Paul's conviction, the Pennsylvania Supreme Court never dealt with the actual ineffectiveness issue because they used the waiver. So, and let me tell you for a moment what Judge Stengel said. Judge Stengel, who allowed a hearing only on ineffective assistance of counsel at the penalty phase, he did not hold a hearing on this issue. But even so, he then went on to, and it's interesting, just as a footnote, when you read Judge Stengel's order and he lists immediately the issues that counsel raised, the ineffective assistance for failing to present the confession isn't one of them. But he then goes on and addresses it at the end anyway. And this is what he says. What he says is trial counsel did present evidence that defendants had mental problems, but the thrust of counsel's motion was that the police tricked the defendants into signing a blank form on which the police wrote the confession. Defendants' supposed mental problems had little, if anything, to do with this alleged bruise. And so, look at the circularity of Judge Stengel's findings and hold that against the statute. What he's saying is the lawyer argued that Mr. Fahey was tricked into making his confession. When he signed the blank form, he wanted to recall that the evidence was a discretionary. The evidence of the mental health problems... The finding was that he did not sign a blank form. Is that correct? Yes. The evidence of Mr. Fahey... Judge Stengel made rules. The evidence of Mr. Fahey's mental problems would not have shown that he was tricked into signing the blank form. That circular ruling by Judge Stengel doesn't address this claim, especially so because he didn't hold a hearing on it in the first place. So, all we're saying is when you look at Mr. Fahey's history, when you look at what that evidence is, we submit, we've given your honors enough, that when this kid gets remanded to Judge Shapiro for disposition of the penalty-feds' issues, which is something the parties agreed needs to happen, we urge that you also say, look at this confession issue and hold a hearing on it. Don't you, if you would, in your remaining time, address the trial transparency in conjunction with Batson? Yes, I do. What we've asked, what we asked for, the main thing we've asked for all along was a proceeding to reconstruct the record. It doesn't come often. In Jones v. Love, Judge Dalzell did that just recently. It's something that gets done, reconstruction of the records. Judge Shapiro, rarely from scratch and rarely without some specific showing, where is there, anywhere in the papers, a suggestion of some specific error that occurred? That's question one. Question two is, is there anything in the record from trial and appellate counsel about specific errors that occurred during the jury selection stage? And if not, why not? Because I understand him to have been consulted about other matters. Yes, trial and appellate counsel were both Mr. Green. Yes. And what is in the record is what I told Judge Shapiro, that we made efforts to get the transcript and to talk to prior counsel about it, and those efforts were unsuccessful. Isn't your adversary correct that our Karabin decision makes that pretty palpable? Karabin says, show me. Show us why you need this transcript. That has to be more than four. Because I might be able to find something. Right? I wish it wasn't, but it is more than that. So what are you offering? Sure. And what we're offering you is a bad thing claim. And a bad thing claim that has something to it. It has something to it because you're wrong. But a bad thing claim that is pretty powerfully or not. Right. That's the legal issue before the court. Well, first of all, I guess maybe the first question is, do you really have a bad thing claim? Yes. If we have a bad thing claim, then Your Honor should allow reconstruction because then we shall lose. Obviously we need to reconstruct. Oh, there's statistics in this record about racial composition that might suggest a bad thing claim to us. We have not pled anything from the voir dire against the circularity of it There's nothing for us to get a hold of that we can say there is some probability or even possibility that this specific event occurred or did not occur during the year. Am I correct? We've urged you to take inference from historical facts, but the answer to you directly is no. We don't have anything specific. And if we write you this in this case, then it would have to be in any case in which the petitioner comes forward with a claim but no affirmative showing. With a claim that has what we think is support, and the support is the historical information and the information about general practice in Philadelphia County that we've pled in detail. But general practice, pursuant to the Pennsylvania rules, in fact, did not require the voir dire be transcribed at that time. Isn't that correct? Correct. So nothing untoward happened here at that time. Pardon? Pardon? Correct. The duty was upon Mr. Green to author the transcript. If, of course, he saw some issue that might have made availability of the transcript to him of some value for his own purpose. Right? Yes. Yes. I mean, you know, we have several ineffectiveness issues as to Mr. Green, one of which is general practice. But my point is that if we agree with you on this, then we have to agree on just about any case where a claim was made. I'll tell you why I think so. I don't think so because I think in this case we have made a challenge. We've presented to you evidence generally about Philadelphia in the Babson area. That's general evidence in any Philadelphia case. That would open it up to any claim. If you're telling us you don't think that's what we got, if you don't think that's good enough, we don't have more evidence. I'm asking you why is it good enough. I'm not making any determination. Because a reasonable person looking at that evidence about the historical practice in Philadelphia County and the fact that this court in four cases and several additional district court cases and several cases from the Pennsylvania Courts of Common Pleas and the Pennsylvania Supreme Court have all said there is a Babson area in these trials. This was a practice at the time. That came out to say to a reasonable person, well, maybe we should allow a reconstruction hearing in this case. A minute and a half, let me talk about powers. I know because you brought it up, Judge Ambrose. And it's simplest. At the core, simplest level, Babson said there's two things to consider. One is the fairness to the defendant. And secondly is the equal protection rights of the jurors. Powers said there are two things to consider, fairness to the defendant and the equal protection rights of the jurors. Those whole things, when you put them side by side, are not the same. Powers extended Babson to defendants challenging the exclusion of jurors of another race. Correct. That's what you have here. Yes. But powers has not been made retroactive. By any court of appeals, has it? Correct. I couldn't find a single one. There are at least four that have refused. Retroactive. You've got to convince us that it gives us a new rule, don't you? We have to convince you that Powers was dictated by Babson. And for the reasons we laid out in the brief, Powers was dictated by Babson. They apply the same criteria. Fairness to the jurors. Powers was a third party standing case. Yes. Doesn't that place it miles away from Babson? Well, no. Because in looking at third party standing under the Teague analysis, you're not only locked into looking at Babson and at Powers itself. You also look at what was the third party standing law before Powers. And clearly, third party standing law. But even there, there are four circuits, the 7th, the 9th, the 10th, and the 11th, that hold that Babson does not apply to different race situations. Yes, they did. And those circuits and those circuits. Is there any circuit court that's gone your way? There's the citations and the argument presented in our brief, but we don't have a circuit court case that we can rely on. I will say, as to those circuit court cases, just one final comment. And the final comment is that all of those cases ignored the fact, did not give sufficient heat to the fact that in Babson itself, the court said, look at the rights of the jurors. And the defendant, in a criminal case, can bring the Babson claim to protect the rights of the jurors, which is what Powers was really based on. And once you look at it that way, there's an argument to be made under T. And we've been able to increase. Unless your honors have further questions, I thank you very much, your honors. Thank you. Thank you very much. Ms. Murray? Yes, we probably want to hold you for about 10 minutes for the rebuttal. I'd like to answer very quickly, if I may, the argument of the counsel, your friend, why the ineffective assistance aspect of the mental health and state of the petitioner. Why should that be remanded to Judge Shapiro? My position, your honor, is that it should not be. Assuming there's ineffective assistance, why is there also prejudice in counsel not bringing that forward? As Judge Shapiro correctly noted in filing, there was no harm in error. Even if the concession was admitted at trial. And of course, the court found, Judge Shapiro found nothing wrong with the concession, no basis for suppression. The evidence in this case, even aside from the concession, is overwhelming. He not only confessed to his girlfriend, he confessed to his mother. He led the police to the knife which used to stab the 12-year-old minor victim 18 times in the chest. He led the police to that. He threw it in a cellar. He led them to it. Of course, your honor, his position is, he recognized all that evidence. His position is, a jury, having correctly being brought to their attention the mental state and the history of the Fahy, may have reasonably concluded, look, it's not first degree murder. It's secondary murder. So it's ineffective for counsel not to have brought that up in the suppression, or at least to the jury, in summation. Your honor, even aside from the concession, the medical examiner's testimony alone would have been enough. Can you say he stabbed this 12-year-old little girl 18 times in the chest? We know how illegal it is. That's the thing. We've got to establish a specific attack. Excuse me. Excuse me, your honor. Allow judges to ask questions. All I was just about to say was that specific intent was precisely the question I asked of your adversary, and I saw you nodding your head when I made the question. So we know that. We've established that much. Well, thank you, your honor. And that's my point, that the concession would not be only, far from the only evidence, demonstrating Fahy's specific intent to kill. He also strangled the child with various ligatures, including an electrical cord and a T-shirt. Could that be consistent with his mental state, though? Well, that's a different defense altogether, which has never been presented. Mr. Fahy even took the police to the location of the murder weapon. Which I think is reflective of his mental capabilities. I think it's not only reflective of his mental capabilities. It is at least a piece of evidence corroborative of his role in the offense, separate and apart from any confession that was placed on paper and made law. Isn't it? Correct, your honor. I will make certain to point out that the medical evidence that was proffered, even now, for that matter, at the Federal Evidence Hearing, but also at the PCR Evidence Hearing, was a two-day hearing. And Fahy actually presented a medical expert, a Dr. Tepper. And Dr. Tepper was not of the opinion that Henry Fahy was in any way incompetent. The two pre-sentenced doctors who evaluated him prior to sentencing, after he was convicted, Drs. Camille and Statton, they both found Henry Fahy to be competent. In fact, their diagnosis was a severe personality disorder, but no major melanoma, and found him competent. In fact, even Henry Fahy's present expert, Dr. Bernstein, has never, even by affidavit, proffered anything suggesting that Fahy was incompetent at the time he waived his Miranda rights and admitted this heinous crime, which he also admitted to his mother and his girlfriend. In light of that, the ineffectiveness claim was quite properly rejected by Judge Shapiro. There's no basis for remand. You wanted to address the sentencing, and I'll ask one further question with regard to the labor issue. Why don't you deal with the sentencing? You said you wanted to address that before you sat down the first time. Oh, yes. Just the other aspect of our appeal. I will rely on my brief with regard to the Batson Powers claim unless the court has any questions, and I believe I discussed the transgridge issue before. I would like to mention the other basis of our appeal, and that is the court's grant of military leave, of course, prior to the United States Supreme Court decision in Beard v. Banks. Of course, as the court well knows, in Beard v. Banks, the Supreme Court held that the decision was ineligible. I thought you and Mr. Knowles agreed that Beard overrules the decision here. And in light of that, I would suggest that the same remedy that was employed in Albert should apply. The court could either reverse, or it could do what it did in Albert, and remand for denial of the Knowles claim, and then review of the remaining heavily defamed claims. There are a number of them, which Judge Shapiro did not reach because she granted leave on the Knowles claim. The other thing I might mention is the standard of review, if it's of any help to the court. Before you do that, just go back to the waiver issue. The court, the PICRA court, said that he waived his PICRA rights. But was there any finding that he had waived his federal habeas rights? Yes, Your Honor, to this extent. What the state Supreme Court said twice was that he waived his rights to further collateral review. Now, further collateral review encompasses both state and federal. It was not a finding that he waived his right to PICRA, or in other words, he just withdrew a PICRA petition, or he waived his right to appeal. I mean, for a long time, Fay has been claiming that he only waived his right to appeal. That is flatly rejected by the findings of the state court. The state court found he waived his right to further collateral review. What the state court referred back to was the statement by Judge Sabo. He said, all right, Mr. Fahy, I will inform the Supreme Court of Pennsylvania that you were knowingly waiving all your appellate rights and all your PICRA rights. Now, by appellate rights, that doesn't mean habeas rights. Appellate meant, I believe he referred to appellate rights because at the time Fay elected to bring further review, he was on appeal in the Pennsylvania Supreme Court from the denial of his PICRA petition. The appeal stayed up there. The only thing the Supreme Court remanded was for the narrow purpose of conducting a colloquy on violence. Correct, Your Honor. And what he waived was that appeal to the Supreme Court on the merits of all of the issues that were presented to the PCRA, a court in the third PCRA, and the court conducted a two-day evidentiary hearing. My point is, where is there a specific waiver of federal habeas? You have to look to the colloquy. And he specifically, I think I read it before, he specifically said he's waiving alternative review because what he says is, I want to waive everything, I want to be executed immediately. So in terms of that, if he's not going to... He wasn't asked at the August 9th hearing if he was attending to waive his appeal to federal courts, but PICRA counsel then objected and noted that there was no federal court proceeding. It was Mr. Helms who interposed that time. And the court stated, chucked in and says, quote, you are not here to cross-examine or anything. This is between Mr. Fahey and myself, who were sent down for me to decide. So, I mean, Mr. Mullen, he didn't get a chance. Well, the basis for my contention that Mr. Fahey waived his right to federal review is grounded in the colloquy itself. He himself, out of his own mouth, said, I waived all that, I want to be executed immediately. Is Judge Ambrose correct? That is the only reference anywhere in the colloquies or records of the two hearings, August 2nd and August 9th. And it is as specific as it gets with respect to habeas. And that is the question, are you telling me you wish to withdraw your appeal to the Pennsylvania Supreme Court and to the federal courts? That's it, isn't it? Doesn't get any more specific than that about federal habeas. Anywhere in the record that you can think of. Just the colloquy, that's it. I mean, I don't think there's... And I think the state courts referred to collateral review, but it didn't say PCRA review, it said collateral review. And I think implicit in the term collateral review is both state and federal, or it would have said... Well, it may be habeas for us lawyers, probably. I mean, it's fairly not specific. I had the state courts... But Fahey said he never spoke to a lawyer about it. Well, he claims he hasn't. But as a lawyer, he wasn't even allowed to impose much of an objection. In any event... I think my time is up, so... The standard view is fairly addressed in my brief. There's one point I would like to make, if it's possible, with regard to standard of review. I'll give you one minute. Okay. He was preparing for argument today, and I let Mr. Nolas know about this. I discovered it's unpublished. I realize it's not presidential. Unpublished decision of this court on the question of whether a lower court determination, adjudication, is entitled to deference under the ESSA. Judge Shapiro and I submit, ruled correctly, that a lower court finding is an adjudication on the merits, and there's no need that those issues be presented to an appellate court in order for ESSA deference. It's smallest versus patent. That's smallest, S-N-A-L-I-S. Smallest versus patent. 152, federal appendix 252, decided in 2005. It's not published. What's the holding again? The holding in smallest is that the ESSA standard of review applies to a lower court decision. It's an adjudication on the merits. That's an opinion vote. There's certainly nothing in the language of the statute that would suggest that a lower court determination was not entitled to deference. Correct, and that is Judge Shapiro's reasoning. This court has said in public decisions that we look to the last statement of decision on the merits. But this court never actually reached the issue. It bypassed it in another case, rape versus bond. So I just wanted to make the court aware of that one issue. But we contend that Judge Shapiro was correct in her analysis. Thank you. Thank you, Your Honor. I would like to thank both counsel for exceptionally well-done arguments and briefings. And I would ask counsel if after we recess or adjourn, if they would coordinate with Ms. Lange on having a transfer of the parents or argument. Thank you. Who's queen? Matt, the government sponsor. You guys, this court stands adjourned.